1

1    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF MISSISSIPPI
2    OXFORD DIVISION

3

4    UNITED STATES OF AMERICA                    PLAINTIFF

5    VS.                              NO. 3:19-CR-65-5

6    JAMES VAUGHN A/K/A SIR FLUTE                 DEFENDANT

7

8                    CHANGE OF PLEA

9

10         BEFORE HONORABLE DEBRA M. BROWN
           UNITED STATES DISTRICT JUDGE
11

12            Greenville, Mississippi
                September 12, 2019
13

14   APPEARANCES:

15   For the Government:    SAMUEL R. STRINGFELLOW, ESQUIRE
                            U.S. Attorney's Office
16                          900 Jefferson Avenue
                            Oxford, Mississippi  38655
17

18   For the Defendant:     A. E. "RUSTY" HARLOW, JR., ESQUIRE
                            Harlow Law Firm
19                          850 Lakeview Drive
                            Grenada, Mississippi  38901
20

21   Court Reporter:        BRENDA D. BLACKBURN, RPR, CCR #1087
                            Federal Official Court Reporter
22                          305 Main Street
                            Greenville, Mississippi  38701
23

24

25

2

1          (Convened:  1:59 p.m.)

2          **THE COURT:**  Good afternoon.  Be seated.

3          Please call our case.

4          **COURTROOM DEPUTY:**  The Court calls case number

5     3:19-CR-65-5, United States of America versus James Vaughn.

6          **THE COURT:**  This is a change of plea hearing.  Who

7     is here as counsel for the government?

8          **MR. STRINGFELLOW:**  Sam Stringfellow for the

9     government, Your Honor.

10         **THE COURT:**  And as counsel for the defendant?

11         **MR. HARLOW:**  Rusty Harlow for the defendant, Your

12    Honor.

13         **THE COURT:**  And our probation officer present?

14         **PROBATION OFFICER:**  Kimberlee Hatter, Your Honor.

15         **THE COURT:**  You all may come forward if you're

16    prepared to proceed.

17         (Parties complied.)

18         **THE COURT:**  Please administer the oath to the

19    defendant.

20         **COURTROOM DEPUTY:**  Raise your right hand.

21         (Oath administered by Courtroom Deputy.)

22         **THE COURT:**  Sir, is your full legal name James

23    Vaughn, or do you have a middle name?

24         **THE DEFENDANT:**  Middle name.

25         **THE COURT:**  And what is --

1    **THE DEFENDANT:** James --

2    **THE COURT:** -- that name?

3    **THE DEFENDANT:** -- Edward Gibson Vaughn.

4    **THE COURT:** I'm sorry, speak up a little louder.

5    **THE DEFENDANT:** James Edward Gibson Vaughn.

6    **THE COURT:** Okay. Mr. Vaughn, do you understand

7    that you're now under oath and if you answer any question I

8    ask you falsely, your false answer may be used against you

9    in a prosecution for perjury or making a false statement?

10   **THE DEFENDANT:** Yes, ma'am.

11   **THE COURT:** And do you understand that you have the

12   right to remain silent and not answer any of the Court's

13   questions?

14   **THE DEFENDANT:** Yes, ma'am.

15   **THE COURT:** The Court has been advised that you now

16   wish to plead guilty to Count 2 of the indictment pursuant

17   to a written plea agreement with the government. Is that

18   correct?

19   **THE DEFENDANT:** Yes, ma'am.

20   **THE COURT:** I have then many, many questions to ask

21   you. The goal is to make sure that you're fully informed of

22   your rights and that you understand your rights in this

23   proceeding. If at any point in time you do not understand a

24   question I ask you, will you let me know so that I can

25   clarify it for you?

4

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  And will you also tell me if at any

3    point you would like to speak with your attorney?

4          **THE DEFENDANT:**  Yes, ma'am.

5          **THE COURT:**  Now, how old are you, Mr. Vaughn?

6          **THE DEFENDANT:**  32.

7          **THE COURT:**  What is the highest level of school

8    that you've completed?

9          **THE DEFENDANT:**  Eighth grade.

10          **THE COURT:**  You do not have a GED or something

11    similar?

12          **THE DEFENDANT:**  No, ma'am.

13          **THE COURT:**  Now, are you presently under the

14    influence of any drugs, medicine or alcohol?

15          **THE DEFENDANT:**  No, ma'am.

16          **THE COURT:**  Now, is there any medication that

17    you're prescribed to take on a daily basis?

18          **THE DEFENDANT:**  Not anymore.  I quit.

19          **THE COURT:**  Okay.  Tell me about that then.  When

20    you quit, what the medication was?

21          **THE DEFENDANT:**  I was taking Depakote, lithium,

22    Remeron, Benadryl; I think, Paxil, and something else.

23          **THE COURT:**  Now, which of those were prescription?

24    I think I know.  But tell me which ones that you needed a

25    prescription for.

1          **THE DEFENDANT:**  All of them.

2          **THE COURT:**  All of them.  Okay.  And tell me then

3     whether or not you were required to take all of them on a

4     daily basis.

5          **THE DEFENDANT:**  Yes, ma'am.

6          **THE COURT:**  At least once a day.

7          **THE DEFENDANT:**  Yes, ma'am.  He regularly

8     prescribed them.

9          **THE COURT:**  Okay.  And so when did you stop taking

10    them then?

11         **THE DEFENDANT:**  About a week before this incident.

12         **THE COURT:**  Before.  Now, be specific as to

13    "incident."

14         **THE DEFENDANT:**  What I'm pleading guilty to, all

15    what took place.  About two weeks.  Two weeks.

16         **THE COURT:**  Okay.  So two weeks before the matter

17    that's alleged in the indictment, that's when you stopped

18    taking them, if I understand you correctly.

19         **THE DEFENDANT:**  Yes, ma'am.  But it's -- it's not

20    alleged.  I'm guilty as hell.  I meant -- I'm sorry.  I'm

21    guilty though.

22         **THE COURT:**  I just wanted to make sure that I

23    understood when.  Now, all of those medications, I'm not

24    going to say that -- I'm certainly not a doctor.  I don't

25    know what they are.  I recognize some of them.  But let me

6

1    first ask you -- and you can just consider these questions

2    applicable to everything that you told me that you were

3    taking.

4            **THE DEFENDANT:**  Yes, ma'am.

5            **THE COURT:**  Was anything that you were taking

6    prescribed to help your memory or understanding about

7    things?

8            **THE DEFENDANT:**  I'm not sure about that, ma'am.

9            **THE COURT:**  Okay.  Well, let me ask you this then.

10   Since you stopped taking the medication, have you had any

11   issues with understanding things?

12           **THE DEFENDANT:**  Sometimes.  Not really, no, ma'am.

13           **THE COURT:**  Okay.  Are you having any issues

14   today --

15           **THE DEFENDANT:**  No, ma'am.

16           **THE COURT:**  -- with understanding things?

17           **THE DEFENDANT:**  No, ma'am.

18           **THE COURT:**  Okay.  And what, if any, effects have

19   you had or type of -- well, let me start over with that

20   question.  What, if any, negative effects have you had since

21   the time you stopped taking the medications compared to

22   today?  In other words, how have you been affected by stop

23   taking the medi- -- those medicines?

24           **THE DEFENDANT:**  I can't sleep sometimes.

25           **THE COURT:**  Okay.

1              **THE DEFENDANT:**  Still got a lot of energy, you

2    know.

3              **THE COURT:**  Uh-huh.

4              Now, you said you can't sleep sometimes.  Did you

5    sleep well last night?

6              **THE DEFENDANT:**  No, ma'am, not really.

7              **THE COURT:**  Do you feel tired here today right now?

8              **THE DEFENDANT:**  No, ma'am.

9              **THE COURT:**  Do you feel that in any way that you're

10   not one hundred percent as far as knowing what's going on

11   here today and proceeding with this hearing?  Because it is

12   important that you are cognizant of everything that's going

13   to happen here today.

14             **THE DEFENDANT:**  Yes, ma'am.

15             **THE COURT:**  Okay, so let me ask you the question

16   again.  Do you feel like you are at sufficient capacity,

17   meaning are you feeling okay physically such that you're

18   okay with going forward -- and I'm sorry.  I keep asking

19   these compound questions.

20             **THE DEFENDANT:**  Yes, ma'am.

21             **THE COURT:**  It's probably confusing because I'm

22   confusing myself.  Do you feel okay physically right now?

23             **THE DEFENDANT:**  Yes, ma'am.

24             **THE COURT:**  And I used the term one hundred percent

25   before.  Do you feel that in any way that physically you're

8

1  not prepared to proceed with this hearing today?

2          THE DEFENDANT:  No, ma'am.

3          THE COURT:  Now, outside of not being able to

4  sleep, any other effects that you've had since you've

5  stopped taking those medications?

6          THE DEFENDANT:  Not that I can remember, ma'am.

7          THE COURT:  Okay.  Was there anything that you now

8  remember that you didn't tell me about when we were listing

9  -- when you were listing all those medications?

10          THE DEFENDANT:  Um --

11          THE COURT:  And my questions will apply -- my same

12  questions will apply to all of them.

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And let me just tell you, my goal is to

15  make sure that you don't have any issues that would affect

16  your competency in this case.  And to me, that means

17  anything.  Whether you're physically tired, whether you're

18  mentally tired, whether there's anything that would affect

19  your ability to understand what's happening here today.

20  Those where my questions were aimed at.

21          THE DEFENDANT:  I understand.

22          THE COURT:  Okay.  Now, have you ever been treated

23  or hospitalized for an addiction to drugs?

24          THE DEFENDANT:  An addiction to drugs.  Um, I took

25  A&D in prison.

9

1      **THE COURT:**  I'm sorry?

2      **THE DEFENDANT:**  I took A&D in prison.

3      **THE COURT:**  What is A&D?

4      **THE DEFENDANT:**  Alcohol & Drug.

5      **THE COURT:**  Okay.  So have you had some drug

6  addiction issues in your past?

7      **THE DEFENDANT:**  Yes, ma'am.

8      **THE COURT:**  Have you ever been specifically treated

9  for those drug addiction issues?

10      **THE DEFENDANT:**  Just the A&D.

11      **THE COURT:**  Okay, just the A&D.  That's the only

12  time while you've been incarcerated somewhere?

13      **THE DEFENDANT:**  Yes, ma'am.

14      **THE COURT:**  Now, how long have you had some

15  addiction issues?

16      **THE DEFENDANT:**  My whole life.  I love 'em.

17      **THE COURT:**  Okay.  I appreciate your honesty in

18  that regard.

19      I'm trying to find out whether or not -- and I'm

20  going to ask you these questions, so I know -- if you want

21  to consult with your attorney, that's fine.  Given your

22  history with an addiction with drugs, when is the last time

23  you've taken any controlled substance that you -- that was

24  not prescribed to you?

25      **THE DEFENDANT:**  Day before yesterday.

10

1          THE COURT:  The day before yesterday, okay.

2          Now, I want to -- I'm going to ask -- make sure you

3    listen to my question.  What you say you took the day before

4    yesterday was something that was not prescribed to you;

5    correct?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Okay.  Now, what was that?

8          THE DEFENDANT:  Marijuana joint.

9          THE COURT:  Okay.  While you've been incarcerated?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  Okay.

12         THE DEFENDANT:  I know there's a thing as being too

13   honest but --

14         THE COURT:  No, no, no.  I appreciate that.  And

15   that's all I ask you to do here today is to be honest in

16   answering these questions.

17         So it was a couple of days ago.  So it was a couple

18   of days ago, you said?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  All right.  You know how marijuana

21   makes you feel?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Certainly by now, I would think.

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  The effects of that marijuana that you

11

1    smoked a couple of days ago --

2            THE DEFENDANT:  Uh-huh.

3            THE COURT:  -- are you still feeling any of that

4    presently?

5            THE DEFENDANT:  Oh, no, ma'am.

6            THE COURT:  So I'm just going to go back and make

7    sure we cover our tracks with everything.  Is there anything

8    else then, other than the marijuana that you told me that

9    you consumed two days ago, that you have indulged in?

10           THE DEFENDANT:  No, ma'am.

11           THE COURT:  Okay.  Have you ever been treated for

12   mental illness?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  Okay, let's start -- let's go

15   backwards.  And when was the last time you had mental

16   illness treatment?

17           THE DEFENDANT:  I don't really remember the last

18   time.

19           THE COURT:  More than --

20           THE DEFENDANT:  I was more, like, 16.

21           THE COURT:  Oh, when you were 16.  Okay.

22           THE DEFENDANT:  At the time, I went to a crazy

23   house.

24           THE COURT:  All right.  And that was about when you

25   were 16?

12

1        **THE DEFENDANT:**  Yes, ma'am.

2        **THE COURT:**  What type of treatment was it?  Was it

3   inpatient or outpatient?

4        **THE DEFENDANT:**  Inpatient.

5        **THE COURT:**  Okay.  So someone -- you actually were

6   in a facility while you were being treated then?

7        **THE DEFENDANT:**  Yes, ma'am.

8        **THE COURT:**  Okay, can you tell me what you were

9   treated for, if you recall.  And you don't have to give me

10  the medical term.  But just kind of describe them in your

11  common everyday knowledge, to the extent that you can.

12       **THE DEFENDANT:**  I think it was anger problems.

13       **THE COURT:**  Okay.

14       **THE DEFENDANT:**  I'm pretty sure that's what it was.

15       **THE COURT:**  Okay.  And were you prescribed any

16  medication at the time for the anger problems while you were

17  in the facility?

18       **THE DEFENDANT:**  Not that I remember.  But I've been

19  prescribed a lot of medications since I was five years old,

20  on and off.

21       **THE COURT:**  All right.

22       **THE DEFENDANT:**  Ritalin, Risperdal, Adderall,

23  Depakote a few times.  I can't really remember the other

24  ones.  Haldol.  Man.

25       **THE DEFENDANT:**  I ain't a doctor.  But they gave me

1    some stuff I don't even think I was supposed to be taking at

2    that age.

3            **THE COURT:**   Okay.  Now, you mentioned Depakote, I

4    think.  I think that was one of the things that you

5    mentioned when I asked you what is it that you were -- the

6    medications that you were taking.  So you've taken that as

7    an adult.  Is that --

8            **THE DEFENDANT:**  Yes, ma'am.

9            **THE COURT:**  -- fair to say?

10           Do you specifically know -- and I know mixed in

11   with everything that you've been taking -- what that

12   Depakote -- because I'm not a medical doctor and I'm just

13   going to rely upon what you tell me now.  What was --

14   specifically was that Depakote prescribed for?  What was it

15   supposed to help you with?

16           **THE DEFENDANT:**  Depression and mood swings.

17           **THE COURT:**   Okay.  And so I have to ask then,

18   because you told me that you haven't taken that since two

19   weeks before the matters that were alleged in the

20   indictment.  Have you had any depression or mood swings

21   since you stopped taking that medication?

22           **THE DEFENDANT:**  Yes, ma'am.  It's been a while

23   though.  I mean, after the incident, like I said, I got

24   right back on my medication because I thought that was part

25   of it, what the doctor said down at East Meridian.  But

14

1    after about another month and a half, maybe two, I stopped

2    taking it when I got moved to CMCF, and I ain't took it

3    since.  It's been almost a year now.

4         **THE COURT:**  And that's been a long time.  So then I

5    have to follow up with these questions then.  Are you in any

6    way feeling depressed today?

7         **THE DEFENDANT:**  No, ma'am.

8         **THE COURT:**  Are you in any way feeling anxious

9    today?

10        **THE DEFENDANT:**  No, ma'am.

11        **THE COURT:**  So outside of the time that you told me

12   about when you were 16 in the facility, and then all of my

13   followup questions, any other instances where you've been

14   treated for mental illness?

15        **THE DEFENDANT:**  When I was, like, four and a half

16   to, like, seven.

17        **THE COURT:**  Okay.  And is it about the same -- same

18   type of issues that you've described for me earlier?

19        **THE DEFENDANT:**  I saw my uncle electrocuted.

20        **THE COURT:**  Okay.  I can imagine -- you said you

21   were between four and seven.

22        **THE DEFENDANT:**  Uh-huh.

23        **THE COURT:**  All right.  So I think that goes

24   without saying.  And I know you were very young then.  But I

25   just want to understand, you know, why you sought -- or at

15

1    least why someone thought you needed counseling back then.

2    So I understand that.

3           Okay.  Any other instances then after the time you

4    were 16, since you've been an adult?

5           **THE DEFENDANT:**  No, ma'am.  Not that I can think

6    of.

7           **THE COURT:**  Okay.  Now, I'm going to ask you this

8    broad question, and it applies to this entire proceeding no

9    matter how far we get into it.  If at any point during this

10   proceeding, you feel that you're not understanding things,

11   you feel depressed, anxious, such that you need to stop and

12   you want to stop things, that's something I want you to tell

13   me.  Do you agree to let me know that?

14          **THE DEFENDANT:**  Yes, ma'am.

15          **THE COURT:**  Okay.  So I think we've covered all of

16   the instances where you've had treatment for mental illness

17   when you were young, and you told me about the other

18   instances with regard to the Depakote.  So we've talked

19   about that.

20          Do you recall whether or not any of the other

21   medications you told me about had anything to do with some

22   type of treatment for you having any type of mental

23   challenges in that regard like the Depakote?

24          **THE DEFENDANT:**  No, ma'am.  My momma told me when I

25   was young that I had ADHD, ADD, SLD, OCD, and bipolar.

16

1   That's what part of the medications is for, and it's a long

2   history.  I mean, I'm pretty sure you don't want to get into

3   all that, I mean.

4          **THE COURT:**  Well, I mean, if I think it's going to

5   affect your ability to understand anything here today, I'm

6   certainly going to get into it.

7          **THE DEFENDANT:**  No, ma'am.

8          **THE COURT:**  But I want to know -- and actually that

9   may be something that you may have already spoken about

10  either with your attorney or will speak about with the

11  probation officer at some point.  But, again, I'm primarily

12  concerned about how you feel today and whether or not you

13  feel you're okay with proceeding with this.  So you feel --

14         **THE DEFENDANT:**  I feel --

15         **THE COURT:**  -- you're okay?

16         **THE DEFENDANT:**  -- one hundred, ma'am.

17         I feel one hundred, ma'am.

18         **THE COURT:**  Okay.

19         And just a broad question.  I know I've asked you

20  about it before, but it is very important.  Do you believe

21  that there is anything, anything at all, whether it's

22  related to any mental issue or any physical issue that would

23  prevent you from hearing everything that's going to happen

24  here today and fully understanding the charges against you?

25         **THE DEFENDANT:**  No, ma'am.

1    **THE COURT:**  Okay.  Anything -- that's all the same

2  question with regard to you fully understanding the

3  consequences of the guilty plea?

4    **THE DEFENDANT:**  Yes, ma'am.

5    **THE COURT:**  Okay.  So let me get that question out

6  again.  Is there anything that would prevent you from fully

7  understanding the consequences of the guilty plea?

8    **THE DEFENDANT:**  No, ma'am.

9    **THE COURT:**  Do I need to ask it another way

10  perhaps?

11    **THE DEFENDANT:**  No, ma'am.

12    **THE COURT:**  Let me try it again.  I'm sorry.

13    Is there anything that would stop you from fully

14  understanding what it means to enter a plea of guilty here

15  today?

16    **THE DEFENDANT:**  No, ma'am.

17    **THE COURT:**  Okay.  Well, Counsel, given the

18  discussion Mr. Vaughn and I have had, I have to ask both of

19  you, do you believe for any reason that Mr. Vaughn would not

20  be competent to proceed here with the plea today?

21    Mr. Stringfellow?

22    **MR. STRINGFELLOW:**  No, Your Honor.

23    **THE COURT:**  Mr. Harlow?

24    **MR. HARLOW:**  I have no reason to believe that he is

25  not fully competent.  We've had several discussions, and

18

1    he's very forthcoming, as the Court has learned.

2         **THE COURT:**  All right.  Mr. Vaughn, I do find that

3    you're competent to enter a plea here today.

4         **THE DEFENDANT:**  Yes, ma'am.  Thank you.

5         **THE COURT:**  Now, Mr. Vaughn, can you confirm for me

6    that you've received a copy of the indictment pending

7    against you in this case?

8         **THE DEFENDANT:**  Yes, ma'am.

9         **THE COURT:**  Now, Count 2 of that indictment -- and

10   I'm just summarizing in brief.  Count 2 charges you with

11   assault with a deadly weapon in violation of 18, United

12   States Code, §§1959(a)(3) and (2).

13        Now, would you like to have the indictment read,

14   sir, or is reading waived, Mr. Harlow?

15        **THE DEFENDANT:**  No, ma'am.  That's fine.

16        **THE COURT:**  Okay.  You waive reading of the

17   indictment?

18        **THE DEFENDANT:**  Yes, ma'am.

19        **THE COURT:**  Okay.  Now, can you confirm for the

20   Court that you are fully aware of what you're charged with

21   in Count 2?

22        **THE DEFENDANT:**  Yes, ma'am.

23        **THE COURT:**  Okay.  Now, and have you fully

24   discussed the charges in the indictment and the case in

25   general with your attorney?

19

1       **THE DEFENDANT:**  Yes, ma'am.

2       **THE COURT:**  Now, with respect to Count 2, there are

3   certain elements of proof associated with Count 2 that if

4   for any reason your case went to trial, the government would

5   have to prove those elements against you beyond a reasonable

6   doubt before you could be found guilty.  I'm going to ask

7   the government's attorney to state those elements for the

8   record.

9       Mr. Stringfellow.

10      **MR. STRINGFELLOW:**  In order to show the defendant

11  guilty of violating Title 18, United States Code,

12  §1959(a)(3), the following would have to be proven:

13      That the Simon City Royals is an enterprise.

14      That the Simon City Royals were engaged in, or its

15  activities affected, interstate commerce.

16      That the Simon City Royals engaged in racketeering

17  activity.

18      That the defendant committed an assault with a

19  dangerous weapon which caused serious bodily injury, and

20  that the assault with a dangerous weapon was committed for

21  the purpose of maintaining or increasing the defendant's

22  position in the organization.

23      **THE DEFENDANT:**  I don't agree with that.

24      **MR. STRINGFELLOW:**  The term "enterprise" includes

25  any individual or partnership, corporation, association, or

1     other legal entity, and any union or group or individuals

2     associated in fact although not a legal entity.

3     Racketeering activity includes dealing in controlled

4     substances as well as acts involving murder which are

5     chargeable under -- as a felony under state law.  The

6     maximum possible penalties under this would be not more than

7     20 years imprisonment, and not more than a $250,000 fine.

8     Not more than three years of supervised release, and $100

9     special assessment.

10     **THE COURT:**  Okay.  And I think we went a little bit

11     before just the elements of proof.  I think you went into

12     penalties, Mr. Stringfellow.

13     **MR. STRINGFELLOW:**  Oh, yes, Your Honor.  I'm sorry.

14     **THE COURT:**  So I think I'm going to have you read

15     them over again then.  I want to hear just the elements of

16     proof.

17     **MR. STRINGFELLOW:**  The elements under Count 2, the

18     comment would have to prove again are:

19     That the Simon City Royals is an enterprise.

20     The Simon City Royals was engaged in or its

21     activities affected interstate commerce.

22     That the Simon City Royals engaged in racketeering

23     activity.

24     That the defendant committed an assault with a

25     dangerous weapon which caused serious bodily injury, and

1  that he did so for the purpose of maintaining or increasing

2  his position in the organization.

3          The term "enterprise" includes any individual

4  partnership, corporation, association, or other legal entity

5  in a union or group of individuals associated in fact

6  although not a legal entity.

7          Racketeering activity includes dealing in

8  controlled substances as well as murder, which is chargeable

9  as a felony under state law.

10          **THE COURT:** All right. Mr. Vaughn, those are the

11  elements associated with Count 2. Now, I heard you say a

12  few things while he was reading them the first time. So --

13          **THE DEFENDANT:** I'm sorry.

14          **THE COURT:** -- my first question to you --

15          **THE DEFENDANT:** I didn't mean to interrupt, Your

16  Honor.

17          **THE COURT:** Okay. My first question to you -- and

18  let's make sure we don't try to speak over one another,

19  because our court reporter has got to take down everything

20  we say. And it is important that we get down everything you

21  and I say.

22          **THE DEFENDANT:** Yes, ma'am.

23          **THE COURT:** First question, do you have any

24  questions about the elements of proof?

25          **THE DEFENDANT:** No, ma'am.

22

1          **THE COURT:**  Do you have any questions about the

2    nature of the charges in the case against you as to Count 2?

3          **THE DEFENDANT:**  No, ma'am.

4          **THE COURT:**  Okay.  Now, to the extent you don't

5    have to tell me anything that you spoke with your attorney

6    about.  I do not want to know that.  But given some of the

7    comments that you made while he was reading the elements the

8    first time, is there anything that you need to ask me about

9    that relative to your comments that do not involve any

10   conversations with your attorney?

11         **THE DEFENDANT:**  What do you mean?  I don't

12   understand.

13         **THE COURT:**  Okay.  I just heard you --

14         **THE DEFENDANT:**  I can ask my lawyer, right?

15         **THE COURT:**  Yeah, you can ask your lawyer whatever

16   you like.

17         **THE DEFENDANT:**  All right.

18         **THE COURT:**  It's just that when he was -- you

19   remember when he was reading the elements the first time --

20         **THE DEFENDANT:**  Yes, ma'am.

21         **THE COURT:**  -- I heard you say something that I

22   thought you may disagree with something.

23         **THE DEFENDANT:**  No, ma'am.  I was asking -- I

24   didn't understand.  But he explained it to me.

25         **THE COURT:**  Okay.  That's all I wanted to make

23

1    sure.

2             **THE DEFENDANT:**  Yes, ma'am.

3             **THE COURT:**  I wanted to make sure.  Before we move

4    on, I wanted to make sure that we cleared that up.

5             **THE DEFENDANT:**  Yes, ma'am.

6             **THE COURT:**  All right.  So what I'm going to do

7    next then, I'm going to do next then, I'm going to advise

8    you of the maximum possible penalties applicable to Count 2.

9             And they are imprisonment for 20 years, supervised

10   release after imprisonment for not more than 3 years, a fine

11   of not more than $250,000, and a special assessment of $100.

12            Now, if you plead guilty here today and the Court

13   accepts your plea, I'm going to sentence you eventually.  If

14   you're sentenced to serve time in prison, do you understand

15   that you may be subject to supervised release after you've

16   been released from prison?

17            **THE DEFENDANT:**  Yes, ma'am.  Can we just tack all

18   that on together?

19            **THE COURT:**  What do you mean?

20            **THE DEFENDANT:**  Probation.  I don't do too good

21   with that, I don't think.

22            **THE COURT:**  I'm sorry.  It's --

23            **THE DEFENDANT:**  Nevermind.

24            **THE COURT:**  No, no, no, no.  It's -- no, no.  Any

25   question you have, it is fine.  Please ask it.  Now is the

24

1   time to ask those questions.  So just -- I just didn't

2   understand what you asked me.  So try me again.

3           **THE DEFENDANT:**  I was kind of asking if I could

4   have no probation, basically, and whatever time that is to

5   add in it.  Because I tend to get myself into trouble with

6   my PO's.  From previous experience, anyway, they tell me

7   something and I might snap for no reason, you know, and it's

8   not a good thing.

9           (Counsel and defendant conferring.)

10          **THE COURT:**  My response to all of that is if you

11  plea and I accept your plea, I'm going to sentence you.

12  Then there's going to be a presentence report prepared.

13          **THE DEFENDANT:**  Okay.

14          **THE COURT:**  All of that information that you just

15  told me will be taken into account and put in the

16  presentence report.  Also, to the extent that you have any

17  particular concerns about what you're sentence will be and

18  how I will sentence you, you are entitled to tell me all of

19  that at your sentencing hearing, or if you would like to

20  write a letter to the Court before your sentencing hearing.

21          **THE DEFENDANT:**  Yes, ma'am.

22          **THE COURT:**  All those things, you can put it in a

23  letter.  I -- trust me, I will read it.

24          **THE DEFENDANT:**  Yes, ma'am.

25          **THE COURT:**  I read everything.  Sometimes people

1  don't like that.  But I read every single word of everything

2  that I think is important when I'm determining a sentence.

3  So, that will be the time for that.

4      **THE DEFENDANT:**  Yes, ma'am.

5      **THE COURT:**  But with respect to the maximum

6  possible penalties applicable to Count 2, do you understand

7  all of them?

8      **THE DEFENDANT:**  Yes, ma'am.

9      **THE COURT:**  Okay.  Now, I had asked you about

10  supervised release, and specifically, if you were sentenced

11  to serve time in prison and if you're subject to a term of

12  supervised release, do you understand that that term will

13  start after you've been released from prison?

14      **THE DEFENDANT:**  Yes, ma'am.

15      **THE COURT:**  Now, if for some reason you end up with

16  supervised release -- and I am going to take all these

17  things into account that you tell me and the probation

18  officer tells me -- do you understand that if you violate

19  one or more of the conditions of supervised release, you may

20  be returned to prison for all or part of that supervised

21  release period?

22      **THE DEFENDANT:**  Yes, ma'am.

23      **THE COURT:**  Now, do you have any questions at all

24  about the maximum possible penalties I just stated?

25      **THE DEFENDANT:**  No, ma'am.

1      **THE COURT:**  Okay.  So what we're going to do now,

2  we're going to move next to the evidence that the government

3  would be prepared to prove against you if your case went to

4  trial.

5      So, Mr. Stringfellow, what is the government's

6  evidence?

7      **MR. STRINGFELLOW:**  Had this matter proceeded to

8  trial, the United States of America would have introduced

9  evidence that would have shown beyond a reasonable doubt the

10  following:

11      In the Northern District of Mississippi and

12  throughout the state of Mississippi and surrounding states,

13  like Alabama, Louisiana, and Tennessee, beginning in the

14  late 90s until present day, the Simon City Royals operated

15  inside and outside the prison facilities throughout

16  Mississippi.  In prison, the SCRs are partners with another

17  national street gang, the Gangster Disciples.  The

18  organization operates an extensive drug trafficking network

19  through the prison system and across the state.  For

20  example, SCR members will provide other gang members in

21  prisons located in Aberdeen or Marshall County with names

22  and numbers of drug suppliers.  Incarcerated gang members

23  will then order the narcotics and have them delivered to

24  them via guards and other methods.  SCR members use a number

25  of unifying identifiers to signify their affiliation with

1  the gang, which typically begin with the number 13, and gang

2  names that begin with "Sir."

3      Members and associates also signify affiliation

4  with the gang using SCR emblazoned clothing, motorcycle

5  jackets, tattoos, as well as frequently using social media

6  platforms to post pictures, videos, and statements

7  identifying and highlighting the existence of the time gang,

8  their affiliation with the gang, and gang-related

9  activities.

10      The purposes of the Simon City Royals include

11  promoting and enhancing the gang and its activities through

12  narcotics distribution and acts of violence, sharing and

13  disseminating information about gang plans and activities,

14  preserving and protecting gang power and reputation through

15  intimidation, threats of violence, and acts of violence.

16  Confronting and retaliating against rival gangs and gang

17  members, including through acts of violence.

18      SCR members achieve the purposes and participate in

19  the gang's affairs by, among other actions, conspiring with

20  each other to commit and committing acts of violence,

21  selling drugs, including methamphetamine, and boasting about

22  the same on social media; sharing and storing firearms for

23  one another, and signaling their affiliation with the Simon

24  City Royals on social media platforms.

25      Given these activities, SCRs, including its

28

1  leadership members and associates constitute an enterprise

2  as defined in Title 18, United States Code, $1959(b)(2),

3  that is, a group of individuals associated in fact that

4  engaged in the activities of which affected interstate

5  commerce.  The enterprise constitutes an ongoing

6  organization whose members function as a continuing unit for

7  a common purpose of achieving the objectives of the

8  enterprise.

9          As it relates to James Vaughn, the United States

10  would have introduced evidence that he joined the Simon City

11  Royals in 2011.  As a member of the gang, he was expected to

12  follow orders passed down by high-ranking officials of both

13  the SCRs and Gangster Disciples.

14          On or around May 15, 2018, members of the Gangster

15  Disciples and Simon City Royals planned to execute a bag and

16  tag order, that is, an assault with a dangerous weapon

17  against two individuals, D.R. and C.B., who were imprisoned

18  in the East Mississippi Correctional Facility located in

19  Meridian, Mississippi.  The bag and tag order was ordered

20  after one of the members disrespected a high-ranking member

21  of the gang, which was Jonathan Davis a/k/a as "Merc".

22  Davis reported the incident to the board consisting of

23  Gangster Disciples and SCR gang members located across the

24  state in both this district and the Southern District of

25  Mississippi.  Members of the board included:  Latory

29

1   Daniels, Justin Leake, Jonathan Davis, Joshua Miller,

2   Anthony Murphy, Greg Moffett, and Bryce Francis.  These

3   members ordered an assault of the victims, and this order

4   was then sent to the defendant, James Vaughn, along with

5   other gang members, including Donald Jones and Wilton

6   Johnson.  The defendant complied with the order and both

7   victims were subsequently attacked.

8        Specifically, after receiving the order, Mr. Jones,

9   Vaughn, and Johnson carried shanks, that is, metal objects

10  sharpened at one end, and used them to assault both victims.

11  The People involved in the assault were:  Justin Hannah,

12  Wilton Johnson, Donald Jones, Carl McMillian, Arvis Tolbert,

13  James Vaughn, Joe Johnson, and Jeremy Smith.  During the

14  attack, Vaughn was securing a specific area while Jones and

15  Johnson ambushed Victim 1, which is C.B.  When the ambush

16  occurred, Victim 2, D.R., fled down the stairs, tried to

17  grab a mop -- and tried to grab a mop to defend himself.

18  Vaughn and other gang members chased him, tackled him on the

19  ground, and then proceeded to beat and stab him.  Eventually

20  they stopped when MDOC officers entered the area.

21        Both victims, as a result of the attacks, received

22  serious bodily injury.  Afterwards, prison staff recovered

23  items used by the gang members in the assault, including a

24  22-inch metal pipe, and 8-inch metal hook, a 12-inch wooden

25  stick, and a 7-inch shank.  Investigators reviewed the

1   surveillance video cameras in the prison and identified the

2   defendants as participants in the stabbing, which included

3   James Vaughn.  Federal law enforcement obtained several

4   reports compiled by the members of the organization as well

5   reports compiled by participants in the crime.  The gang

6   members were required to draft and file

7   after-action-reports.  As such, law enforcement is in

8   possession of several of the reports which detailed the

9   planning, the participants, and the reasons for the attack.

10         Finally, the United States asks the Court to take

11   judicial notice that Aberdeen and Marshall County are in

12   this district.

13         The statement of facts is provided to the Court to

14   assist the Court in determining whether a factual basis

15   exists for the defendant's plea of guilty.  It does not

16   contain each and every fact known to the defendant and to

17   the United States concerning the defendant and/or others'

18   conduct or other members.

19        **THE COURT:**  Mr. Vaughn, the government's evidence

20   as stated by the government's attorney, it was fairly

21   extensive.  But my question for you is whether or not you

22   understood everything that was said about the government's

23   evidence against you?

24        **THE DEFENDANT:**  Yes, ma'am.

25        **THE COURT:**  Now, is everything that the

1    government's attorney said about you specifically, and about

2    your conduct specifically, true and correct?

3              **THE DEFENDANT:**  Yes, ma'am.

4          **THE COURT:**  Do you wish to plead guilty here today,

5    sir, voluntarily and of your own free will because you are

6    in fact guilty?

7              **THE DEFENDANT:**  Yes, ma'am.

8          **THE COURT:**  Now, has anyone threatened you or in

9    any way attempted to force you to plead guilty?

10            **THE DEFENDANT:**  No, ma'am.

11          **THE COURT:**  The Court finds then that there is a

12    factual basis for you to plead to this charge.

13          We're going to turn next then to the plea agreement

14    between you and the government.  And to start that off, I'm

15    going to ask the government's attorney to state the

16    substance of the plea agreement into the record.

17          **MR. STRINGFELLOW:**  The defendant agrees to plead

18    guilty under oath to Count 2 of the indictment which charges

19    that on or around May 15, 2018 of this district for the

20    purpose of maintaining and increasing position in the Simon

21    City Royals, an enterprise engaged in racketeering activity,

22    the defendant, with others both known and unknown, aiding

23    and abetting each other, did knowingly assault D.R. with a

24    dangerous weapon, which resulted in serious bodily injury,

25    and which again, carries a maximum possible penalty of 20

1    years imprisonment, not more than 3 years of supervised

2    release, not more than a $250,000 fine, a special assessment

3    of a $100.

4         The United States has agreed to not charge the

5    defendant with any offenses that arise from or are related

6    to the above charge.  This agreement is limited to the

7    United States Attorney's Office for this district, and is

8    non-binding on any other federal, state, or local

9    prosecuting administrative or regulatory authority.  This

10   agreement applies only to crimes committed by the defendant.

11   It does not apply to any pending forfeiture proceedings, and

12   shall not preclude any past, present, or future civil or

13   forfeiture actions.

14        Should the defendant breach or otherwise violate

15   this agreement, including attempting to withdraw his guilty

16   plea, the United States would be released from any

17   sentencing recommendations or agreements and would be free

18   to argue for any sentence within the statutory limits.

19        The defendant understands that he's waived his

20   rights under Federal Rules of Evidence 410 and Rule 11(f) of

21   the Federal Rules of Criminal Procedure.

22        He understands that restitution may apply.

23        And he has waived his rights to appeal and to

24   collaterally attack his sentence, reserving the right to

25   raise issues regarding prosecutorial misconduct and

1    ineffective assistance of counsel.

2            The defendant acknowledges there has been no

3    promise whatsoever as to the punishment the Court might

4    impose if it accepts the plea of guilty.

5            The defendant's agreement is knowing, free, and

6    voluntary, and it's not the product of force, threat, or

7    coercion.  He is pleading guilty because he is guilty.

8            **THE COURT:**  Mr. Vaughn, did the government's

9    counsel accurately state the substance of the plea agreement

10   as you understand that substance to be?

11           **THE DEFENDANT:**  Yes, ma'am.

12           **THE COURT:**  Mr. Stringfellow, would you hand the

13   original copy of the plea agreement to Mr. Vaughn.

14           (Counsel complied.)

15           **THE COURT:**  Mr. Vaughn, I just have one question

16   for you about that original copy.  I want you to look at

17   that signature on that and tell me that that original

18   signature that is shown to be your signature is indeed where

19   you signed that document?

20           **THE DEFENDANT:**  Yes, ma'am.

21           **THE COURT:**  It is?

22           **THE DEFENDANT:**  Yes, ma'am.

23           **THE COURT:**  Okay.

24           Either one of you can bring forth the original

25   then.  Just let Ms. Thomas have it.

34

1          (Counsel complied.)

2          **THE COURT:**  Mr. Vaughn, did you have the

3    opportunity to read and discuss the contents of the plea

4    agreement with your attorney before you signed the document?

5          **THE DEFENDANT:**  Yes, ma'am.

6          **THE COURT:**  Do you understand all the terms of the

7    plea agreement?

8          **THE DEFENDANT:**  Yes, ma'am.

9          **THE COURT:**  Mr. Harlow, can you confirm that you

10   did discuss the plea agreement with Mr. Vaughn, as well as

11   review the facts of the case and everything the government

12   has relative to the case with him?

13         **MR. HARLOW:**  Yes, Your Honor.

14         **THE COURT:**  Do you believe that Mr. Vaughn will be

15   entering into this plea freely and voluntarily with full

16   knowledge of the charges and the consequences of the guilty

17   plea?

18         **MR. HARLOW:**  Yes, Your Honor.

19         **THE COURT:**  All right.  The plea agreement will be

20   filed.

21         Mr. Vaughn, do you understand that the offense in

22   Count 2 is a felony?

23         **THE DEFENDANT:**  Yes, ma'am.

24         **THE COURT:**  Do you understand then that if you

25   plead guilty to that felony and the Court accepts your plea,

1   you will be convicted of the felony and that this conviction

2   may prevent you from holding public office, sitting on a

3   jury, voting, and possessing any kind of firearm whatsoever?

4           **THE DEFENDANT:** Yes, ma'am.

5           **THE COURT:** To the extent that you plead here today

6   and the Court accepts your plea and I sentence you, I'm

7   going to be guided by the sentencing guidelines that have

8   been implemented by the United States Sentencing Commission.

9   These guidelines are advisory only. So the Court is not

10   bound to follow them. Can you confirm for me that you and

11   your attorney have discussed how those sentencing guidelines

12   might apply to your case?

13           **THE DEFENDANT:** Yes, ma'am.

14           **THE COURT:** Do you understand that we won't be able

15   to determine your guideline sentence until after a

16   presentence report has been prepared and you've had the

17   opportunity to review it with your counsel and determine

18   whether you have any objections to anything in it?

19           **THE DEFENDANT:** Yes, ma'am.

20           **THE COURT:** Do you understand that after your

21   guideline range has been determined, the Court has the

22   authority in some circumstances to depart upward or downward

23   from those guidelines, and all that means is the Court may

24   impose a less severe sentence or a more severe sentence than

25   what is called for by the guidelines?

36

1          **THE DEFENDANT:**  Yes, ma'am.  I understand.

2          **THE COURT:**  Now, do you understand as well that,

3     regardless of the guideline range, the Court has the

4     authority to sentence you to a term of imprisonment up to

5     the maximum time allowed by law?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  Do you understand that if you're

8     sentenced to served time in prison, you will not be released

9     on parole because in this federal court parole has been

10    abolished?

11         **THE DEFENDANT:**  Yes, ma'am.

12         **THE COURT:**  And I wanted to ask you one question.

13    I'm going to go back to the plea agreement.

14         Mr. Stringfellow did mention that the plea -- in

15    the plea agreement you agree, if the plea agreement is

16    accepted, to waive your rights to appeal or collaterally

17    attack your conviction and your sentence.  Do you recall

18    that?

19         **THE DEFENDANT:**  Yes, ma'am.

20         **THE COURT:**  Okay.  So you understand if I accept

21    the plea agreement, you will have waived those rights to

22    appeal or collaterally attack your conviction and your

23    sentence?

24         **THE DEFENDANT:**  Yes, ma'am.

25         **THE COURT:**  So I have one additional series of

1    questions to ask you before I ask you for your plea.  Before

2    I do that though, I want to ask you about your legal

3    representation, specifically Mr. Harlow.  Have you had

4    sufficient time to discuss your case with your attorney and

5    have any and all questions you have answered to your

6    satisfaction?

7            **THE DEFENDANT:**  Yes, ma'am.

8            **THE COURT:**  Do you believe your attorney has

9    represented your best interest in this case?

10           **THE DEFENDANT:**  Yes, ma'am.

11           **THE COURT:**  Are you satisfied with your attorney's

12    representation of you?

13           **THE DEFENDANT:**  Yes, ma'am.

14           **THE COURT:**  All right.  Let's turn to this final

15    series of questions then.

16           These questions concern your constitutional rights,

17    and in particular, your waiver of those rights, your giving

18    up those rights if you plead guilty here today.  Do you

19    understand you have the right to plead not guilty?

20           **THE DEFENDANT:**  Yes, ma'am.

21           **THE COURT:**  Do you understand that under the

22    Constitution and the laws of this country, you're entitled

23    to a speedy and public trial by jury on the charges against

24    you?

25           **THE DEFENDANT:**  Yes, ma'am.

1          **THE COURT:** Do you understand that if you had a

2    trial, you would be presumed innocent of the charges, and

3    the government would have to prove your guilt beyond a

4    reasonable doubt before you could be found guilty?

5          **THE DEFENDANT:** Yes, ma'am.

6          **THE COURT:** Do you understand that if you had a

7    trial, the government's witnesses would have to come into

8    court and testify in your presence, that your attorney could

9    cross-examine the government's witnesses and your attorney

10   could also call witnesses to testify on your behalf?

11         **THE DEFENDANT:** Yes, ma'am.

12         **THE COURT:** Now, do you understand that if you had

13   a trial, you would have the right to require that witnesses

14   come to court and testify?

15         **THE DEFENDANT:** Yes, ma'am.

16         **THE COURT:** Do you understand as well that if you

17   had a trial and were convicted, you would have the right to

18   appeal your conviction and your sentence?

19         **THE DEFENDANT:** Can you repeat that one more time?

20         **THE COURT:** Uh-huh.

21         Do you understand if you had a trial and were

22   convicted, you would have the right to appeal not only your

23   conviction but also your sentence?

24         **THE DEFENDANT:** Yes, ma'am.

25         **THE COURT:** Do you understand that if you had a

1    trial, you would have the right to testify in your own

2    defense?

3              **THE DEFENDANT:**  Yes, ma'am.

4              **THE COURT:**  Do you understand that if you chose not

5    to exercise your right to testify in your own defense, the

6    fact that you did not testify could not be used against you?

7              **THE DEFENDANT:**  Yes, ma'am.

8              **THE COURT:**  Now, based on your responses to all the

9    questions that I've just asked you, do you understand that

10   if you plead guilty here today and the Court accepts your

11   plea, there's not going to be a trial, I'm going to enter a

12   judgment of guilty against you and then I'm going to

13   sentence you after I've considered a presentence report?

14             **THE DEFENDANT:**  Yes, ma'am.

15             **THE COURT:**  And then in that situation you're going

16   to waive your right to trial and all the other

17   constitutional rights that I've just discussed with you?

18             **THE DEFENDANT:**  Yes, ma'am.

19             **THE COURT:**  Do you have any questions about your

20   constitutional rights or your giving up of your

21   constitutional rights if you plead guilty here today?

22             **THE DEFENDANT:**  No, ma'am.

23             **THE COURT:**  Has your attorney specifically

24   discussed giving up these constitutional rights with you?

25             **THE DEFENDANT:**  Yes, ma'am.

40

1      **THE COURT:** Now, having discussed giving up these

2    constitutional rights with your attorney, do you still wish

3    to enter a plea of guilty here today to Count 2?

4      **THE DEFENDANT:** Yes, ma'am.

5      **THE COURT:** That being the case then, in the case

6    of United States versus James Vaughn, Mr. Vaughn, how do you

7    plead to Count 2 of the indictment?

8      **THE DEFENDANT:** Guilty.

9      **THE COURT:** It is the finding of this Court then,

10   in the case of the United States versus James Vaughn that,

11   Mr. Vaughn, you're fully competent and capable of entering

12   an informed plea, that you're aware of the nature of the

13   charges and the consequences of the guilty plea, and that

14   your guilty plea is a knowing and voluntary plea supported

15   by an independent basis and fact which contains each of the

16   essential elements of the offense, and not the result of

17   force, threats, or promises.

18      The Court, therefore, accepts your plea. The Court

19   also accepts the plea agreement.

20      **THE DEFENDANT:** Yes, ma'am.

21      **THE COURT:** And I want to state for the record --

22   and it's primarily for this Court's record -- that there was

23   not a plea supplement submitted in this case. Correct,

24   Counsel?

25      **MR. HARLOW:** Correct, Your Honor.

1    **MR. STRINGFELLOW:** Yes, Your Honor.

2    **THE COURT:** Correct, Mr. Vaughn?

3    **THE DEFENDANT:** Yes, ma'am.

4    **THE COURT:** All right, Mr. Vaughn, since we have

5    now convicted you of Count 2, based on your guilty plea,

6    what's going to happen from here is the probation officer is

7    going to prepare a presentence report. I mentioned that

8    earlier in this proceeding. You're going to be questioned

9    by the probation officer for purposes of that report. I

10   encourage you to be as honest and forthcoming as possible

11   with the probation officer because your responses will be

12   incorporated into that report. And as I said before, I read

13   every single word in determining what I believe is an

14   appropriate sentence in your case.

15        Now, you will have the opportunity to speak at your

16   sentencing hearing. Again, I mentioned that earlier. Your

17   attorney will also have the opportunity to speak at your

18   sentencing hearing.

19        After that presentence report has been prepared,

20   you will have a chance to review it with your attorney and

21   determine whether or not you have any objections to any of

22   the reported facts or the application of the sentencing

23   guidelines recommended by the probation officer. Now, when

24   the probation officer is questioning you, I encourage you to

25   have your counsel present as well. Because you may want to

42

1  consult with your counsel as you've done here today during

2  this proceeding.

3          **THE DEFENDANT:**  Yes, ma'am.

4          **THE COURT:**  I am going to set your sentencing

5  hearing for December 18.  That is a Wednesday.

6          Does anyone have any conflict with December 18 that

7  you're aware of?  Mr. Stringfellow?

8          **MR. STRINGFELLOW:**  No, Your Honor.

9          **THE COURT:**  Mr. Harlow?

10         **MR. HARLOW:**  Your Honor, may I check?

11         **THE COURT:**  Uh-huh.

12         **MR. HARLOW:**  Judge, in a quick look, I don't

13 believe I do.

14         **THE COURT:**  If, for any reason, you find you do,

15 just, of course, let us know and --

16         **MR. HARLOW:**  Thank you.

17         **THE COURT:**  -- we'll adjust.

18         **MR. HARLOW:**  Thank you.

19         **THE COURT:**  Mr. Vaughn, I'll tell you, there may be

20 a reason that I move your sentencing hearing myself.

21 Sometimes that happens.  If that happens, we'll let your

22 attorney know and then your attorney can let you know.

23         **THE DEFENDANT:**  Yes, ma'am.

24         **THE COURT:**  Right now, barring anything unforeseen,

25 it will be December 18th.

43

1          **MR. HARLOW:**  Judge, will we be doing that here in

2    Greenville?

3          **THE COURT:**  We will set it for Greenville.  But as

4    you know, sometimes we will move back to the place.  Because

5    we take a lot of things into consideration, Mr. Vaughn.  I

6    like to have all of the sentencings here in Greenville.  But

7    sometimes circumstances arise where maybe my schedule arises

8    that I move it to another location.  Whether it's Oxford --

9    probably most likely would be Oxford.  But I'm going to set

10   it for here.  If we change the place, we'll let your

11   attorney know that as well, and then he can let you know.

12         **THE DEFENDANT:**  I hope so.

13         **THE COURT:**  You would prefer that it not be

14   Greenville?

15         **THE DEFENDANT:**  Yes, ma'am.

16         **THE COURT:**  Is there any particular reason,

17   Mr. Harlow, that you would like to articulate?

18         **MR. HARLOW:**  Your Honor, it's the jail facility,

19   not the courthouse or anything like that.  It's -- I think

20   in talking to Mr. Vaughn, the Oxford facility is -- he just

21   feels better and safer.  He's had some bad experiences in

22   Bolivar County.

23         **THE COURT:**  Has he always been in Bolivar County

24   since his arrest in this case, or was he just recently

25   brought over here --

44

1        **MR. HARLOW:**  No.

2        **THE COURT:**  -- for purpose of the --

3        **MR. HARLOW:**  He was recently brought over here, as

4    in yesterday, I believe.  It has more to do -- it has to do

5    with the jail facility.

6        **THE COURT:**  Now, I do -- Mr. Vaughn, I do tend to

7    leave where you are up to the marshals, because it is

8    their -- I try not to get involved with them because they --

9    where they transport you and all that sort of stuff.

10       **THE DEFENDANT:**  It's not what they did recently.

11   It's just years ago I was incarcerated there and had some

12   bad experiences.

13       **THE COURT:**  Okay.  Let me see here.  I tell you

14   what I will do.  As I said before, your sentencing will be

15   set for Greenville.

16       **THE DEFENDANT:**  Yes, ma'am.

17       **THE COURT:**  I will consult with the marshals and

18   see about -- because I'm thinking -- I'm not going to ask

19   the marshals here present today -- that typically what

20   they'll do, because you -- you came --

21           He came from Oxford; is that right?

22       **MR. HARLOW:**  That's correct, Your Honor.

23       **THE COURT:**  Generally, I think they'll move you

24   back to Oxford.  Would our marshal like to speak on that?

25   You don't have to.  Okay.

45

1          **MARSHAL JOHN THIGPEN:**  Generally, since he was

2   awaiting sentencing, we would probably move him there.  But

3   I don't think it will be any problem to get him moved up

4   there.

5          **THE COURT:**  Okay.  I can't represent to you

6   definitively.  But I can represent to you that if it's not a

7   problem with the marshals, after I've consulted with them, I

8   don't have any problem with you going back to Oxford -- back

9   to Lafayette County.

10         **THE DEFENDANT:**  Anywhere.

11         **THE COURT:**  I just can't make you any promises.

12  Because as I told you, I try not to get involved in what the

13  marshals are doing.  That's kind of their thing.  But

14  certainly if there's a legitimate concern and it's not going

15  to inconvenience the marshals, I have no problem with you

16  going back to Oxford.

17         Now, with that said, though, to the extent I'm

18  going to set your sentencing for Greenville, they will

19  probably bring you back to Greenville.  So, even if you are

20  taken back to Oxford, you will be brought back to this area

21  within probably Bolivar County so that can sentence you.  I

22  just -- at this point I can't make any promises that it will

23  absolutely be moved to Oxford.  But I will take a look at

24  that, and I will keep everything that we've talked about

25  today in consideration.

46

1         **THE DEFENDANT:**  Yes, ma'am.  Thank you.

2         **THE COURT:**  It's just hard to say how that's going

3   to pan out between now and December 18.  But I will keep all

4   that in mind.

5         Okay.  Any other concerns that you have, sir?

6         **THE DEFENDANT:**  No, ma'am.

7         **THE COURT:**  Anything else from anyone here?

8         **MR. STRINGFELLOW:**  No, Your Honor.

9         **MR. HARLOW:**  No, Your Honor.

10        **THE COURT:**  That being the case then, I will see

11  you at your sentencing, Mr. Vaughn.  Let me reiterate one

12  thing I said before.  Because you -- it seemed like you had

13  some things that you wanted to tell me before.  You can put

14  whatever you want to tell the Court that I should take

15  account -- take into account for your sentencing, what type

16  of sentence you're sentenced to, what any conditions of that

17  may be.  You can let me know what you think about that.  You

18  can put it in a letter, or you can wait until the time of

19  your sentencing and tell me that here in open court.

20  Because you will have the right to speak.  So it is up to

21  you.

22        The other thing I wanted to tell you, though, is

23  whether or not you write a letter to the Court -- and I'm

24  saying by no means, you do not have to.  You can wait until

25  your sentencing hearing and stand up and tell me everything

47

1    you want me to take into account.  But what you can do, if

2    you like, if you have persons who you want to submit a

3    letter on your behalf -- it could be friends.  It could be

4    family members.  It could be people in your community that

5    you've been in at any point in time, people you've ever

6    worked for, anybody.  If you believe they have something you

7    want me to take into consideration, if they know something

8    that you want me to take into consideration, go ahead and

9    ask them to write those letters so they can be provided to

10   your attorney and your attorney can file them.  I read them

11   as closely -- probably even more closely sometimes than the

12   presentence report.  Because I often find that they present

13   another side of a defendant such as yourself.

14            **THE DEFENDANT:**  Yes, ma'am.

15            **THE COURT:**  So you're not required to do that

16   either.  I'm just letting you know that it is an option.

17   Okay?

18            **THE DEFENDANT:**  Yes, ma'am.

19            **THE COURT:**  All right.  So I will see you at your

20   sentencing.  And I think we're done here.  This matter is

21   adjourned, and you're remanded to the marshals' custody.

22            **THE DEFENDANT:**  Yes, ma'am.  Thank you.

23          **MR. HARLOW:**  Thank you, Your Honor.

24          **MR. STRINGFELLOW:**  Thank you, Your Honor.

25            (Recessed:  2:49 p.m.)

48

1                          CERTIFICATE

2      I, Brenda D. Blackburn, Federal Official Court Reporter,

3  in and for the United States District Court for the Northern

4  District of Mississippi, do hereby certify that pursuant to

5  Section 753, Title 28, United States Code, that the foregoing

6  47 pages are a true and correct transcript of the

7  stenographically reported proceedings held in the

8  above-entitled matter and that the transcript page format is

9  in conformance with the regulations of the Judicial

10 Conference of the United States.

11      Witness my hand, this 9th day of January, 2020.

12

13                   /s/Brenda D. Blackburn
                     _____
14                   BRENDA D. BLACKBURN, RPR, CCR NO. 1087
                     Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25