1

```
 1              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF MISSISSIPPI
 2                   OXFORD DIVISION

 3

 4  UNITED STATES OF AMERICA                    PLAINTIFF

 5  VS.                             NO. 3:19-CR-65-1

 6  DONALD JONES                                DEFENDANT

 7

 8                     CHANGE OF PLEA

 9

10           BEFORE HONORABLE DEBRA M. BROWN
              UNITED STATES DISTRICT JUDGE
11

12               Greenville, Mississippi
                  November 13, 2019
13

14  APPEARANCES:

15  For the Government:   PHILIP M. LEVY, ESQUIRE
                          U.S. Attorney's Office
16                        900 Jefferson Avenue
                          Oxford, Mississippi  38655
17

18  For the Defendant:    MARGARET S. GRATZ, ESQUIRE
                          Mitchell, McNutt & Sams - Tupelo
19                        P. O. Box 7121
                          Tupelo, Mississippi  38802-7120
20

21
    Court Reporter:       BRENDA D. BLACKBURN, RPR, CCR #1087
22                        Federal Official Court Reporter
                          305 Main Street
23                        Greenville, Mississippi  38701

24

25
```

2

1            (Convened:  3:25 p.m.)

2            **THE COURT:**  Good afternoon.  Be seated, please.

3            Please call our next case.

4            **COURTROOM DEPUTY:**  The Court calls case number

5    3:19-CR-65-1, United States of America versus Donald Jones.

6            **THE COURT:**  This is a change of plea hearing.

7            Who is here as counsel for the government?

8            **MR. LEVY:**  Philip Levy, Your Honor.

9            **THE COURT:**  Who is here as counsel for the

10   defendant?

11           **MS. GRATZ:**  Margaret Gratz, Your Honor.

12           **THE COURT:**  And our representative from probation?

13           **PROBATION OFFICER:**  Brandon Marlier, Your Honor.

14           **THE COURT:**  If the parties are prepared to proceed,

15   please come forward.

16           (Parties Complied.)

17           **THE COURT:**  Please administer the oath to the

18   defendant.

19           **COURTROOM DEPUTY:**  Raise your right hand.

20           (Oath administered by Courtroom Deputy.)

21           **THE COURT:**  Good afternoon, sir.

22           **THE DEFENDANT:**  Good afternoon, Your Honor.

23           **THE COURT:**  I am well, thank you.  You are Donald

24   Jones?

25           **THE DEFENDANT:**  Yes, ma'am.

1         **THE COURT:** Would you come a little forward to the

2 mic. Thank you.

3         **THE DEFENDANT:** Yes, ma'am.

4         **THE COURT:** What is your full legal name, Mr.

5 Jones?

6         **THE DEFENDANT:** Donald W. Jones, Jr.

7         **THE COURT:** You said W. Jones?

8         **THE DEFENDANT:** Uh-huh.

9         **THE COURT:** Just the initial?

10         **THE DEFENDANT:** Wayne.

11         **THE COURT:** Okay. Now, Mr. Jones, do you

12 understand that you are now under oath and if you answer any

13 question I ask you falsely that false answer may be used

14 against you in a prosecution for perjury or making a false

15 statement?

16         **THE DEFENDANT:** Yes, ma'am.

17         **THE COURT:** Do you understand that you have the

18 right to remain silent and not answer any of the Court's

19 questions?

20         **THE DEFENDANT:** Yes, ma'am.

21         **THE COURT:** The Court has been advised that you now

22 wish to plead guilty to Count 1 of the indictment pursuant

23 to a plea agreement with the government. Is that correct?

24         **THE DEFENDANT:** Yes, ma'am.

25         **THE COURT:** I have a number of questions then to

4

1   ask you.  The goal of these questions is to make sure that

2   you're fully informed of your rights and that you understand

3   your rights in this proceeding.  Now, I'm going to ask you

4   to help me out with a few things.  One, if you don't

5   understand the question I ask, let me know, and I will do

6   any best to clarify it.  Two, if you would like to speak

7   with your attorney at any point, you certainly have the

8   right to do so.  Just stop me again, and let me know that

9   you would like to do that.  And three, if at any point in

10  this proceeding you have any concerns or questions, I want

11  you to stop me as well so we can get those addressed.

12          Do you agree to all of that?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  Now, how old are you, sir?

15          **THE DEFENDANT:**  34.

16          **THE COURT:**  You had to think about it?

17          **THE DEFENDANT:**  Yes, ma'am.

18          **THE COURT:**  What is the highest level of school

19  you've completed?

20          **THE DEFENDANT:**  Eleventh grade.

21          **THE COURT:**  Any GED, or any type of equivalent?

22          **THE DEFENDANT:**  No, ma'am, not yet.  I was working

23  on it though.

24          **THE COURT:**  Okay.  Now, are you under the influence

25  of any drugs, medicine, or alcohol presently?

1          **THE DEFENDANT:**  No, ma'am.

2          **THE COURT:**  Now, are there any medications that

3     you're prescribed to take on a regular basis?

4          **THE DEFENDANT:**  Yes, ma'am.

5          **THE COURT:**  Can you tell me what those medications

6     are?

7          **THE DEFENDANT:**  Well, I don't know the -- I don't

8     know the medical name for it.  But it's a nighttime sleep

9     medicine, Remeron.

10          **THE COURT:**  Is that the only one?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  And you're required to take it -- or at

13     least prescribed to take it every evening?

14          **THE DEFENDANT:**  Yes, ma'am, at nighttime.

15          **THE COURT:**  Did you take it last night?

16          **THE DEFENDANT:**  No, ma'am.  I'm waiting on it, to

17     get it.  I just got to Bolivar County, so.

18          **THE COURT:**  Okay.  And to the extent that I presume

19     the medication is to assist you in sleeping, not taking it

20     has no effect on you whatsoever?

21          **THE DEFENDANT:**  No, ma'am.

22          **THE COURT:**  And in particular, it doesn't interfere

23     with your ability to understand things, particularly this

24     proceeding and what will happen here today?

25          **THE DEFENDANT:**  No, ma'am.

1         **THE COURT:**  Okay.  Have you ever been treated or

2    hospitalized for an addiction to drugs, or have any kind of

3    drug treatment?

4         **THE DEFENDANT:**  Yeah, my younger -- my younger

5    days, yes.

6         **THE COURT:**  How old were you at the time?

7         **THE DEFENDANT:**  I don't want to tell you no

8    stories.

9         **THE COURT:**  How about give me a range.  Were you a

10   teenager?  In your twenties?

11        **THE DEFENDANT:**  About twenty.

12        **THE COURT:**  About twenty, okay.

13        **THE DEFENDANT:**  About twenty.

14        **THE COURT:**  Okay.  And was that an inpatient or

15   outpatient thing or --

16        **THE DEFENDANT:**  Just a rehab.  I was court-ordered

17   to rehab.

18        **THE COURT:**  Okay.  So that happened when you were

19   twenty.  So that was more than -- well, close to 14 years

20   ago.

21        **THE DEFENDANT:**  Yes, ma'am.

22        **THE COURT:**  And it was court-ordered.

23        Did you complete the program?

24        **THE DEFENDANT:**  Yes, ma'am.

25        **THE COURT:**  Did it help with your addiction?

1      **THE DEFENDANT:**  Yeah.  Yes, ma'am.

2      **THE COURT:**  For a time?

3      **THE DEFENDANT:**  For a time, right.

4      **THE COURT:**  Now, have you ever been treated for

5 mental illness?

6      **THE DEFENDANT:**  No, ma'am.

7      **THE COURT:**  And do you have any disability or

8 condition, whether physical or mental, that would prevent

9 you from understanding the charges against you or the

10 consequences of the guilty plea?

11      **THE DEFENDANT:**  No, ma'am.

12      **THE COURT:**  Based upon Mr. Jones' responses, the

13 Court finds that he is competent to enter plea.

14      Now, Mr. Jones, can you confirm for me that you've

15 received a copy of the indictment pending against you in

16 this case.

17      **THE DEFENDANT:**  Yes, ma'am.

18      **THE COURT:**  Now, Count 1 -- and I'm just

19 summarizing the charges in Count 1 -- Count 1 charges you

20 with assault with a dangerous weapon for the purpose of

21 maintaining and increasing your position in the Simon City

22 Royals in violation of 18, U.S.C., §§1959(a)(3) and 2.

23 Would you like to have the indictment read, or is reading of

24 the indictment waived?

25      **THE DEFENDANT:**  It's not -- yeah, you can waive it.

1      **THE COURT:**  Okay, so you don't want me to read it.

2  That's fine.

3      **THE DEFENDANT:**  No, ma'am.

4      **THE COURT:**  Now, can you confirm that you're fully

5  aware of what you're charge with Count 1?

6      **THE DEFENDANT:**  Yes, ma'am.

7      **THE COURT:**  Have you fully discussed the charges in

8  the indictment and the case in general with your attorney?

9      **THE DEFENDANT:**  Yes, ma'am.

10      **THE COURT:**  Now, with respect to Count 1, there are

11  certain elements of proof associated with that count that if

12  your case went to trial the government would have to prove

13  those elements against you beyond a reasonable doubt before

14  you could be found guilty.  So for purposes of this

15  proceeding today, I'm going to have the government's

16  attorney read what those elements are.

17      Mr. Levy.

18      **MR. LEVY:**  Thank you, Your Honor.

19      If this case went to trial, the government would

20  have to prove the following:

21      One:  That the Simon City Royals is an enterprise.

22      Two:  That the Simon City Royals was engaged in or

23  in its activities affected interstate commerce.

24      Three:  That the Simon City Royals engaged in

25  racketeering activity.

1    Four:  That the defendant committed an assault with

2 a dangerous weapon which caused serious bodily injury.

3    And five:  That the assault with the dangerous

4 weapon was committed for the purpose of maintaining or

5 increasing the defendant's position in the organization.

6    **THE COURT:**  And, Mr. Jones, having heard those

7 elements associated with Count 1, do you have any questions

8 about them or about anything with respect to the charges

9 against you in this case?

10    **THE DEFENDANT:**  No, ma'am.

11    **THE COURT:**  I am next going to advise you of the

12 maximum possible penalties associated with Count 1.  And

13 they are imprisonment for 20 years, supervised release after

14 imprisonment for not more than 3 years, a fine of not more

15 than $250,000, and a special assessment of $100.

16    If you plead guilty here today, the Court will at

17 some point have to sentence you, Mr. Jones.  To the extent

18 that I do sentence you, do you understand that if you are

19 sentenced to serve time in prison, you may have to serve a

20 term of supervised release after you've been released from

21 prison?

22    **THE DEFENDANT:**  Yes, ma'am.

23    **THE COURT:**  And do you understand as well that that

24 term of supervised release will definitely have associated

25 with this certain conditions, and if you violate one or more

10

1    of those conditions, you could be returned to prison for all

2    or part of that supervised release period?

3              **THE DEFENDANT:**  Yes, ma'am.

4              **THE COURT:**  Now, do you have any questions at all

5    about the penalties that I've just mentioned?

6              **THE DEFENDANT:**  No, ma'am.

7              **THE COURT:**  Do you understand all of them?

8              **THE DEFENDANT:**  Yes, ma'am.

9              **THE COURT:**  Next then, I'm going to ask the

10   government's attorney to state the evidence that the

11   government would be prepared to prove against you if your

12   case went to trial.

13             Mr. Levy, you're on again.

14             **MR. LEVY:**  Thank you, Your Honor.

15             Had this matter proceeded to trial, the United

16   States of America would have introduced evidence and

17   established the following facts beyond a reasonable doubt:

18             The Simon City Royals gang constituted an

19   enterprise that engaged in a racketeering activity in that

20   it is and was throughout the timeframe of the charges in the

21   indictment a group of individuals associated in fact whose

22   members functioned as a continuing unit for the common

23   purpose of achieving the objectives of the gang.

24             The objectives of the gang included the following:

25             Promoting, protecting, and enhancing the authority,

1    reputation, and standing of the Simon City Royals through

2    the use of intimidation, threats, possession of weapons and

3    assaults.

4          Two:  Maintaining control over and protecting the

5    territory of the gan through acts of intimidation, threats,

6    and violence, enriching its members and associates through,

7    among other things, the distribution of controlled

8    substances.

9          Four:  Protecting the gang and its members from

10   detection, apprehension, and prosecution by law enforcement

11   authorities.

12         Five:  Enforcing its authority and power by

13   disciplining and punishing members and associates who did

14   not comply with the Simon City Royals codes or rules.

15         And six:  Retaliating with acts of violence and

16   intimidation non-members and rival gang members who

17   committed acts against the gang members and associates.

18         Furthermore, the Simon City Royals' enterprise was

19   engaged in and its activities affected interstate commerce.

20         The evidence would have shown that members of the

21   enterprise engaged in criminal activity throughout the state

22   of Mississippi including this district.  The primary crimes

23   completed by members in this district were drug trafficking,

24   money laundering, murder, and identity fraud.  For example,

25   SCR members living in Greenwood, Mississippi did deliver

12

1　narcotics on behalf of SCR members who were inside of

2　prisons throughout the state of Mississippi.  Then, the

3　money deprived from these drug sales with funneled back from

4　inside the prison to high-ranking members outside of the

5　prison.

6　　　　　As it relates to Donald Jones, Jones joined the

7　Simon City Royals in 2015.  As a member of the gang, Jones

8　was expected to follow orders passed down by high-ranking

9　members of both the SCRs and the Gangster Disciples.  As a

10　member, Jones paid contributions and attended meetings.  In

11　these meetings, gang business withs discussed.  Gang leaders

12　would issue instructions and violations which include

13　physical beatings that would be issued against gang members

14　who had violated gang rules or who had failed to keep

15　current in their duties or payments.

16　　　　　On or around May 15, 2018, two individuals,

17　initials D.R. and C.B., who were imprisoned in the East

18　Mississippi Correctional Facility located in Meridian,

19　Mississippi, disrespected high-ranking SCR members.  The

20　leadership members ordered subordinate members, including

21　Jones, to assault D.R. and C.B.  After receiving the order,

22　Jones and other members of the gang carried shanks, which

23　are metal objects sharpened at one end, and used them to

24　assault both victims.  People identified in this crime were

25　Justin Hannah, Wilton Johnson, Donald Jones, Carl McMillian

1  Arvis Tolbert, James Vaughn, Joe Johnson, and Jeremy Smith.

2      Specifically, Jones and Johnson ambushed Victim 1,

3  C.B.  When the ambush occurred, Victim 2, D.R., fled down

4  the stairs and tried to grab a mop to defend himself.  Gang

5  members chased Victim 2, tackled him to the ground, and

6  proceeded to beat, kick, and stab him.  Eventually, they

7  stopped when MDOC officers entered the area of the prison.

8  Both victims, as a result of these attacks, received serious

9  bodily injuries.

10     The defendant was aware that he was expected to

11  participate in the assault on the rival gang members, and

12  that serious consequences would occur if he failed to do so.

13  Those consequences included being ostracized from the gang,

14  losing the respect of his fellow gang members, and being

15  subject to a beating and the expulsion from the gang.

16     Prison staff recovered items used by GD/SCR members

17  in the assault with a dangerous weapon, including a 22-inch

18  metal pipe, 8-inch metal hook, a 12-inch wooden stick, and a

19  7-inch shank.

20     Investigators reviewed the surveillance video

21  cameras from the prison and identified Carl McMillian, Joe

22  Johnson, James Vaughn, Justin Hannah, Jeremy Smith, Arvis

23  Tolbert, and Donald Jones as participants in the stabbing.

24     Finally, the United States asks that this Court

25  take judicial notice that Greenwood is in the Northern

14

1  District of Mississippi.

2          This statement of facts is provided to assist the

3  Court in determining whether a factual basis exists for the

4  defendant's guilty plea.

5          This statement of facts does not contain each and

6  every fact known to the defendant and to the United States

7  concerning the defendant and/or others conduct or other

8  matters.

9      **THE COURT:**  Mr. Jones, did you hear and understand

10  everything that was just said with respect to the

11  government's evidence against you?

12     **THE DEFENDANT:**  Yes, ma'am.

13     **THE COURT:**  Now, is everything that was said about

14  you and about your conduct true and correct?

15     **THE DEFENDANT:**  Yes, ma'am.

16     **THE COURT:**  You sure?

17     **THE DEFENDANT:**  Yes, ma'am.

18     **THE COURT:**  Okay.  Now, will you be pleading guilty

19  here today freely and voluntarily with full knowledge of the

20  charges and the consequences of the guilty plea?

21     **THE DEFENDANT:**  Yes, ma'am.

22     **THE COURT:**  Has anyone in any way threatened you,

23  or in any way attempted to force you to plead guilty?

24     **THE DEFENDANT:**  No, ma'am.

25     **THE COURT:**  The Court finds then that there is a

15

1    factual basis for Mr. Jones to plead guilty in this case.

2         Mr. Jones, where did you grow up?

3         **THE DEFENDANT:** Meridian, Mississippi.

4         **THE COURT:** In Meridian.

5         Now, I'm going to next ask Mr. Levy to state the

6    provisions -- the substantive provisions of the plea

7    agreement that you entered into with the government.

8         Mr. Levy, you're on yet again.

9         **MR. LEVY:** Thank you, Your Honor.

10        The defendant agrees to plead guilty under oath to

11   Count 1 of the indictment, which charges that on or around

12   May 15, 2018, in the Northern District of Mississippi and

13   elsewhere, for the purpose of maintaining an increasing

14   position in the Simon City Royals, an enterprise engaged in

15   racketeering activity, the defendant with others, both known

16   and unknown, aiding and abetting each other, did knowingly

17   assault C.B. with a dangerous weapon which resulted in

18   serious bodily injury in violation of Mississippi Code

19   Annotated, §97-3-7, and all in violation of 18, U.S. Code,

20   §§1959 (a) and 2, which carried the maximum possible

21   penalties of 20 years imprisonment, not more than three

22   years supervised release, not more than a $250,000 fine, and

23   a special assessment of $100.

24        In exchange for pleading guilty, the United States

25   agrees not to charge the defendant with any other offenses

1    arising from or related to this charge.

2            This agreement is limited to the United States

3    Attorney's Office for the Northern District of Mississippi,

4    and cannot bind other federal, state, or local prosecuting,

5    administrative, or regulatory authorities.

6            Should the defendant breach or otherwise violate

7    any other provision of this agreement, including attempting

8    to withdraw an already entered guilty plea, the government

9    will be released from any sentencing recommendations or

10   agreements the parties have reached herein and would become

11   free to argue for any sentence within the statutory limits.

12   Should the defendant have already pleaded guilty or been

13   sentenced, the defendant's guilty plea or sentence will be

14   in effect, and any breach by the defendant does not give any

15   right to withdraw from this guilty plea.

16           The defendant understands that if he breaches this

17   plea agreement, that any statements made during proffers by

18   the defendant to law enforcement agents, or any statement

19   made in the course of the plea colloquy may be used against

20   the defendant in any criminal prosecution.

21           The defendant understands that the Court may order

22   restitution in accordance with the provisions of 18, U.S.C.,

23   3663 for all offenses and specifically agrees that

24   restitution is not limited to the count of conviction.

25   Apart from being advised of the applicability of the

1    sentencing guidelines, and other than as set forth elsewhere

2    in the plea documents, no promise or representation

3    whatsoever has been made to the defendant as to what

4    punishment the Court might impose if it accepts a plea of

5    guilty.

6           This agreement fully reflects all promises,

7    agreements, and understandings between the defendant and the

8    United States Attorney.

9           The defendant's agreement is knowing, free, and

10   voluntary, and is not a product of force, threats, or

11   coercion.  The defendant is pleading guilty because the

12   defendant is, in fact, guilty.

13          And also, Your Honor, there is a plea supplement

14   that the government would like to file in this cause.  There

15   have been two deletions of paragraphs from plea agreement

16   that these changes were made relatively recently.  I

17   provided the original plea supplement to the defendant and

18   defense counsel, and they have both initialed the changes,

19   as have I.

20          **THE COURT:**  Okay, before this hearing began?

21          **MR. LEVY:**  Yes, Your Honor.

22          **THE COURT:**  To the extent then that it's different

23   from the proposed plea agreement that you all sent me, in

24   other words.  Okay, let me ask Mr. Jones a couple of

25   questions first then.

1      Mr. Jones, did the government's attorney actually

2  state the terms of the plea agreement as you understand them

3  to be?

4      **THE DEFENDANT:**  Well, say that again, now.

5      **THE COURT:**  Did he accurately state the terms of

6  the plea agreement as you understand those terms to be?

7      **THE DEFENDANT:**  Well, look I just -- I'm going to

8  just say it like this.  I'm not understanding what you're

9  saying.  But I just happened -- I looked at it, and I wasn't

10  paying attention and I needed a couple of things taken out

11  of there that's got words that might have anything to do

12  with cooperating with law enforcement --

13      **THE COURT:**  Oh, I see.

14      **THE DEFENDANT:**  -- on my behalf.  That was all I

15  just wanted out of there.  That's all.

16      **THE COURT:**  Okay, that's fine.  And I tell you

17  what, let me see the original copy of the plea agreement.

18      **MR. LEVY:**  May I approach, Your Honor?

19      **THE COURT:**  Plea supplement, and agreement.  Yes.

20      (Defendant and Counsel conferring.)

21      **THE COURT:**  Okay.  I do see in the plea supplement

22  provisions that had been deleted.  And I'm just going to ask

23  these questions generally, Mr. Jones.  You don't have to

24  tell me specific answers.  But to the extent -- and I'm just

25  going to hold the pages here.  There's a deletion to the

19

1  plea supplement.  You can see that from here?

2          **THE DEFENDANT:**  Yes, ma'am.

3          **THE COURT:**  Okay.  And you did initial that?

4          **THE DEFENDANT:**  Yes, ma'am.

5          **THE COURT:**  Those are your initials right there?

6          **THE DEFENDANT:**  D.J., yes, ma'am.

7          **THE COURT:**  Okay.  And then another page of it

8  shows a deletion as well.

9          **THE DEFENDANT:**  Yes, ma'am.

10          **THE COURT:**  Are those your initials by that?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  And you understand the deletions and

13  whatever terms you and the government came up with that led

14  to those deletions.  Do you understand all that?

15          **THE DEFENDANT:**  Yes, ma'am.

16          **THE COURT:**  And then since I'm asking you about

17  your signature on here, let me -- there's a page in the plea

18  agreement that shows a signature that says it's your

19  signature here.  Is that your signature?

20          **THE DEFENDANT:**  Yes, ma'am.

21          **THE COURT:**  And then there's a page of the plea

22  supplement that shows your signature.  Is that your

23  signature?

24          **THE DEFENDANT:**  Yes, ma'am.

25          **THE COURT:**  Okay.  Did you have the opportunity to

1    review the plea agreement documents with your attorney

2    before you signed them?

3            **THE DEFENDANT:**  Yes, ma'am.

4        **THE COURT:**  And do you understand all of the terms?

5        **THE DEFENDANT:**  Yes, ma'am.

6        **THE COURT:**  Do you understand that the Court has

7    the discretion to reject the plea agreement in total?

8            **THE DEFENDANT:**  Yes, ma'am.

9        **THE COURT:**  And that if the Court does choose to

10   reject the plea agreement, you understand that any

11   provisions of them whether or not it is the United States

12   and you agreeing to anything or any understandings that you

13   came to, that it would mean those would go away as well?

14           **THE DEFENDANT:**  Yes, ma'am.

15       **THE COURT:**  Do you understand as well that to the

16   extent that there are any -- I mentioned to you about any

17   agreements, recommendations, or anything associated with the

18   plea agreement that if the Court determines that the plea

19   agreement should be rejected, that I would give you the

20   opportunity to withdraw your guilty plea?

21           **THE DEFENDANT:**  Yes, ma'am.

22       **THE COURT:**  Do you understand that if you decide

23   not to withdraw the guilty plea, I may impose a more severe

24   sentence without being bound by anything in the plea

25   agreement?  Do you understand that?

21

1        **THE DEFENDANT:**  Yes, ma'am.

2        **THE COURT:**  All right, the plea agreement will be

3   filed; the plea supplement filed under seal.

4        I do want you, Ms. Gratz, to confirm that you

5   discussed the plea documents with Mr. Jones including the

6   facts of the case and everything the government has relative

7   to his case with him.

8        **MS. GRATZ:**  Yes, Your Honor.  And for the record,

9   the original plea agreement and plea supplement, Mr. Jones

10  and I discussed that in detail, and he signed that, and I

11  signed it as well.  We later had a telephone conversation.

12  There was a small change he wanted to make.  So I had my

13  office in Oxford take that change over to him, which is why

14  my law partner signed my name on the plea agreement by

15  permission.

16       **THE COURT:**  Okay.

17       **MS. GRATZ:**  Because that was the same day as our

18  deadline.  So that is the reason that it is not my personal

19  signature on that, although it was on the original one.  We

20  made a slight change, she signed that for me.  And then, of

21  course, we've made the edits that we've discussed with the

22  Court and then initialed today.

23       **THE COURT:**  Okay, I appreciate that.

24       Do you believe that Mr. Jones will be entering into

25  this plea freely and voluntarily with full knowledge of the

22

1    charges and the consequences of the guilty plea?

2           **MS. GRATZ:**  Yes, Your Honor.

3           **THE COURT:**  Next, Mr. Jones, we're going to ask you

4    some questions about things that relate to sentencing.  And

5    in particular, let me first ask you whether or not you

6    understand that the offense in Count 1 is a felony?

7           **THE DEFENDANT:**  Yes, ma'am.

8           **THE COURT:**  Now, if you plead guilty to that felony

9    and the Court accepts your plea, do you understand that

10   pleading guilty to that felony may deprive you of the right

11   to vote, hold public office, sit on a jury, and possess any

12   kind of firearm or weapon?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  Now, to the extent the Court will

15   sentence you, I'm going to be guided by the sentencing

16   guidelines that were implemented by the United States

17   Sentencing Commission.  Those guidelines are only advisory.

18   So I am not bound to follow them, if I choose not to do so.

19          Can you confirm for me that you and your attorney

20   have discussed how those sentencing guidelines might apply

21   to your case?

22          **THE DEFENDANT:**  Yes, ma'am, I understand it.

23          **THE COURT:**  Do you understand as well that the

24   Court won't be able to determine your guideline sentence

25   until after a presentence investigation report has been

1    prepared, and you've had the opportunity to review it with

2    your attorney to determine whether or not you have any

3    objections to reported facts or the application of the

4    guidelines recommended by the probation officer?

5        **THE DEFENDANT:**  Yes, ma'am.

6        **THE COURT:**  Now, do you understand that after your

7    guideline sentence has been determined, the Court has the

8    authority, in some circumstances, to depart upward or

9    downward from those guidelines, and that just means the

10   Court can impose a sentence that less severe or more severe

11   than what is called for by the guidelines?

12       **THE DEFENDANT:**  Yes, ma'am.

13       **THE COURT:**  Do you understand regardless of the

14   guidelines range, the Court has the authority to sentence

15   you up to the maximum time allowed by law to imprisonment?

16       **THE DEFENDANT:**  Yes, ma'am.

17       **THE COURT:**  Do you understand that if you are

18   sentenced to serve time in prison, you will not be released

19   on parole because parole has been abolished in this federal

20   court?

21       **THE DEFENDANT:**  Yes, ma'am.

22       **THE COURT:**  Now, do you understand that under some

23   circumstances you or the government may have the right to

24   appeal any sentence that I impose?

25       **THE DEFENDANT:**  Yes, ma'am.

24

1          **THE COURT:**  All right.  Two other series of

2  questions for your before I ask for your plea.

3          The first concerns your legal representation.  Are

4  you satisfied with your attorney's representation of you?

5          **THE DEFENDANT:**  Yes, ma'am.

6          **THE COURT:**  Do you believe that you've had

7  sufficient time to discuss your case with your attorney and

8  have any and all questions that you had about your case

9  answered to your satisfaction?

10          **THE DEFENDANT:**  Yes, ma'am.

11          **THE COURT:**  And do you believe that your attorney

12  has represented your best interests in this case?

13          **THE DEFENDANT:**  Yes, ma'am.

14          **THE COURT:**  Well, then, the final set of questions

15  pertain to your constitutional rights, and in particular,

16  your giving up of rights if you plead guilty here today.  Do

17  you understand you have the right to plead not guilty?

18          **THE DEFENDANT:**  Yes, ma'am.

19          **THE COURT:**  Do you understand that under the

20  Constitution and the laws of this country, you're entitled

21  to a speedy and public trial by jury on the charges against

22  you?

23          **THE DEFENDANT:**  Yes, ma'am.

24          **THE COURT:**  Do you understand that if you had a

25  trial, the government's witnesses would have to come into

25

1    court and testify in your presence; and that your attorney

2    could cross-examine the government's witnesses and your

3    attorney could call witnesses to testify on your behalf?

4           **THE DEFENDANT:**  Yes, ma'am.

5           **THE COURT:**  Do you understand that if you had a

6    trial, you would have the right to require that witnesses

7    come to court and testify?

8           **THE DEFENDANT:**  Yes, ma'am.

9           **THE COURT:**  Do you understand that if you had a

10    trial, you would have the right to testify in your own

11    defense, but if you chose not to testify in your own

12    defense, the fact that you did not testify could not be used

13    against you?

14           **THE DEFENDANT:**  Yes, ma'am.

15           **THE COURT:**  Do you understand that if you had a

16    trial and you were convicted, you would have the right to

17    appeal not only your conviction but also your sentence?

18           **THE DEFENDANT:**  Yes, ma'am.

19           **THE COURT:**  Now, based upon your responses to all

20    of these questions -- and let me say, I don't -- I'm trying

21    to recall.  I don't know if I asked you this question.  So

22    if I'm asking it again, let's just say we're doing it as a

23    safety measure.  Do you understand that if you had a trial,

24    you would be presumed innocent of the charges, and the

25    government would have to prove your guilt beyond a

26

1  reasonable doubt before you could be found guilty?

2  **THE DEFENDANT:**  Yes, ma'am.

3  **THE COURT:**  Based on all these responses, can you

4  confirm for me, Mr. Jones, that you understand that if you

5  plead guilty here today and the Court accepts your plea,

6  there's not going to be a trial.  I'm going to enter a

7  judgment of conviction after you have entered the plea, and

8  then I'm going to sentence you after I've considered a

9  presentence investigation report?

10  **THE DEFENDANT:**  Yes, ma'am.

11  **THE COURT:**  Now, do you have any questions at all

12  about your constitutional rights or your giving up of those

13  rights?

14  **THE DEFENDANT:**  No, ma'am.

15  **THE COURT:**  Did you discuss giving up your

16  constitutional rights with your attorney?

17  **THE DEFENDANT:**  Yes, ma'am.

18  **THE COURT:**  Do you still wish then to plead guilty

19  to Count 1?

20  **THE DEFENDANT:**  Yes, ma'am.

21  **THE COURT:**  In the case of the United States versus

22  Donald Jones, Mr. Jones, how do you plead to Count 1?

23  **THE DEFENDANT:**  Guilty.

24  **THE COURT:**  It is the finding of the Court then in

25  the case of the United States versus Donald Jones,

27

1   Mr. Jones, you're competent and capable of entering an

2   informed plea, that you're aware of the nature of the

3   charges and the consequences of the guilty plea, and that

4   your guilty plea is knowing, voluntary, supported by an

5   independent basis and fact containing each of the essential

6   elements of the offense and it is not the result of force,

7   threats, or promises.

8          The Court, therefore, accepts your plea, and you're

9   now adjudged guilty of Count 1 in the indictment.

10         The Court as well accepts the plea agreement that

11  you entered into with the government.

12         Now, I've made mention of the presentence

13  investigation report, Mr. Jones.  One will be prepared by

14  the probation office.  And that will assist the Court in

15  determining the appropriate sentence in your case.  You're

16  going to be questioned by a probation officer for purposes

17  of this report.  Please have your attorney present while you

18  are being questioned.  I also encourage you to answer those

19  questions honestly.  It is important that you answer

20  honestly, even if it's something you would rather not talk

21  about.  And let me tell you why.  That presentence report is

22  the primary thing that I consult.  Sometimes it's the only

23  thing that I consult when I'm determining what will be an

24  appropriate sentence.  So it is important that I know as

25  much about you as possible.  And I try to get a full picture

28

1 of everything about you, your life, any prior convictions,

2 everything, so that I can make the best decision about your

3 sentence.

4    After the presentence report has been prepared,

5 now, you will have an opportunity to review it as well as

6 your counsel.  If you have any objections to anything in

7 that report, whether it's a reported fact or the application

8 of the sentencing guidelines, you can voice those objections

9 through your attorney.  If for any reason those objections

10 are not resolved by the time of your sentencing hearing,

11 then I will take them up one at a time at your sentencing

12 hearing.  So I want you to know that.

13    I'm going to set your sentencing for February 12,

14 2020.  It may seem like it's a long way away, but the reason

15 is to give the probation officer enough time to put your

16 presentence report together.  It is an important document,

17 as I've mentioned.

18    Now, at your sentencing hearing, you will have the

19 right to speak on your behalf.  You're not required to, but

20 I'm always willing to hear anything you think I should know

21 before I sentence you.

22    Your attorney will be able to speak as well, as

23 well as the government's counsel.

24    So I'm going to enter an order with February 12th

25 as your sentencing date.  That order, I'm going to have some

1   other deadlines in there.  There will be mention in that

2   order as well about reference letters.  Although it mentions

3   reference letters, there's not going to be a deadline set

4   for the reference letters.  So if there is any person,

5   whether it's a friend, family member, church member,

6   community member, anybody, cousin, former employer, anybody

7   that you want to write something on your behalf to the

8   Court, I will read those letters just as closely as I do

9   that presentence report.  I often find that it presents

10  another side of the defendant that I just don't know about.

11  It just gives me something else to consider.  You are not

12  required to submit those letters, though.  I want you to

13  know that.  But if you are going to submit them, although

14  there's not going to be a deadline, try to go ahead and ask

15  those persons to write them on your behalf, so I'll have

16  them in enough time to read them before your sentencing

17  hearing.

18          Let's see, I think we have covered everything.  Do

19  you have any questions at all, Mr. Jones?

20          **THE DEFENDANT:**  No, ma'am.

21          **THE COURT:**  Anything from you further, Mr. Levy?

22          **MR. LEVY:**  No, Your Honor.

23          **THE COURT:**  Ms. Gratz?

24          **MS. GRATZ:**  No, your Honor.

25          **THE COURT:**  Okay, that being the case, Mr. Jones, I

30

1   will see you February 12th.  You're remanded to the custody

2   of the marshals.  See you then.

3          This matter is adjourned.

4          **MS. GRATZ:**  Thank you, Your Honor.

5          **THE COURT:**  Court is adjourned for the day.

6          **MR. LEVY:**  Thank you, Your Honor.

7          (Recessed:  3:58 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31

1                          CERTIFICATE

2      I, Brenda D. Blackburn, Federal Official Court Reporter,

3  in and for the United States District Court for the Northern

4  District of Mississippi, do hereby certify that pursuant to

5  Section 753, Title 28, United States Code, that the

6  foregoing 30 pages are a true and correct transcript of the

7  stenographically reported proceedings held in the

8  above-entitled matter and that the transcript page format is

9  in conformance with the regulations of the Judicial

10 Conference of the United States.

11     Witness my hand, this 7th day of February, 2020.

12

13                 /s/Brenda D. Blackburn
                   _____
14                 BRENDA D. BLACKBURN, RPR, CCR NO. 1087
                   Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25